## HOUGHTON v. HUBBELL.

(Circuit Court of Appeals, First Circuit. January 19, 1899.)

No. 255.

NATIONAL BANKS—SUITS BY RECEIVER AGAINST SHAREHOLDERS—LIABILITY OF REAL OWNER OF STOCK.

The real owner of shares of stock in a national bank, which, by his procurement or permission, stand on the books of the bank in the name of an agent, and have never been in his own name, may be charged as a shareholder for an assessment made on the bank's insolvency, and the receiver may bring an action at law for the collection of such assessment directly against him, without regard to the liability of the agent.[1]

In Error to the Circuit Court of the United States for the District of Massachusetts.

[1] For liability of real owner of stock in national bank, see note to Beal v. Bank, 15 C. C. A. 130.

William F. Dana (Benjamin E. Bates, on the brief), for plaintiff in error.

Robert M. Morse (William M. Richardson and Charles S. Hamlin, on the brief), for defendant in error.

Before COLT, Circuit Judge, and WEBB and ALDRICH, District Judges.

ALDRICH, District Judge. This is an action at law by the receiver of the Ellensburg National Bank of the State of Washington to recover an assessment of $100 a share on 80 shares of the stock of that bank. At a jury-waived trial below, the plaintiff offered parol evidence tending to show that the defendant was the actual owner of the 80 shares of stock that stood on the books of the bank in the names of Edmund Seymore and William W. Seymore, and that the Seymores were the agents of the defendant. Such evidence was objected to on the ground that it contradicted and varied the records, was received against objection, and the defendant duly excepted. There was a general finding for the plaintiff for $8,046.47, and judgment thereon. 86 Fed. 547.

In this case we have no occasion to deal with the question whether the assessment could have been sustained against the agents who purchased the stock for Mr. Houghton, and appear on the records of the bank as owners. The fact that the record holders may be held does not, necessarily, mean that the actual holders may not be held. The general finding established the fact that the defendant below was the real owner of the stock at the time the bank suspended, and when the assessment was made by the comptroller. While there is, perhaps, no express supreme court authority to that effect in a case exactly in point, the various expressions in the following authorities indicate clearly enough the understanding of the supreme court that the real owner may properly be assessed and held: Anderson v. Warehouse Co., 111 U. S. 479, 483, 4 Sup. Ct. 525; Pauly v. Trust Co., 165 U. S. 606, 619, 623, 17 Sup. Ct. 465; Welles v. Larrabee, 36 Fed. 866, 868; Davis v. Stevens, 17 Blatchf. 259, 7 Fed. Cas. 177 (No. 3,653). The last case cited was decided by the late Chief Justice Waite, sitting in the Southern district of New York. The question was like the one under consideration, except that there the actual owner had fictitiously transferred his stock on the books of the bank to another, the difference therefor being that the actual owner in that case transferred his stock to an agent, or a fictitious person, rather than allow it to remain in the name of an agent, as was done by the owner in this case. It is difficult to perceive, however, that such a situation involves a different principle from that of the question before us. Indeed, the learned justice said, at page 260, 17 Blatchf., and page 177, 7 Fed. Cas.: "The point to be decided now is whether, in an action at law by a receiver of the bank, the real owner of stock in a national bank, standing, by his procurement, in the name of another, and never having been in his own name on the books, can be charged, as a shareholder, with the statutory liability for debts." Again, at page 261, 17 Blatchf., and page 178, 7 Fed. Cas., after discussing the question of the liability of the registered shareholder, the learned justice observes: "The question still remains, however, whether the person for

whom the registered owner holds the stock, if actually the owner, may not also be liable." As a result of the reasoning in that case, at page 263, 17 Blatchf., and page 178, 7 Fed. Cas., he said: "I cannot reach any other conclusion than that Stevens, the decedent, was, in law, a 'shareholder' of the bank at the time of its failure, and, as such, liable in this action." The point involved in Pauly v. Trust Co., 165 U. S. 606, 17 Sup. Ct. 465, was not precisely like the point before us, yet that case and the one under consideration would seem to be on parallel lines; and Mr. Justice Harlan, after analyzing the prior cases relating to the liability of shareholders in national banking associations, states the rules deducible therefrom, and among other things says (page 619, 165 U. S., and page 470, 17 Sup. Ct.): "The real owner of the shares of the capital stock of a national banking association may, in every case, be treated as a shareholder, within the meaning of section 5151." The reasoning of Chief Justice Waite in Anderson v. Warehouse Co., 111 U. S. 479, 483, 4 Sup. Ct. 525, is to the same effect. It is according to principle that a burden of this character should rest upon the actual owner, and, as a general rule, there is no safer party to pursue than the actual responsible owner, on whom the ultimate liability must rest. Assuming that an assessment could have been successfully maintained against the agents who stood upon the bank records as owners, still the comptroller might properly, in his discretion, elect to pursue directly the actual known owner. In doing so in this case, the comptroller elected the more equitable of the legal remedies, and the one which sensibly avoided circuity of action and unnecessary litigation, by striking at once the source upon which, if no exceptional circumstances exist, and necessary remedies were employed by the agents, the statutory burden must finally fall. It cannot be seen that any legal rule interposes, in a situation like this, to prevent reaching a result directly which admittedly can be reached indirectly. Neither can we see any prudential reason for pursuing an indirect legal course when a direct one is fairly and plainly open.

The various objections to evidence were upon the ground that the evidence tended to contradict the record as to ownership. As we sustain the view of the circuit court that the issue of real ownership was material, that the fact of such ownership may be shown, and recovery had from the actual owner, it follows that the evidence was competent, notwithstanding it tended to show a different state of facts as to ownership than that disclosed by the record. The objections to such evidence were, therefore, properly overruled. The judgment of the circuit court is affirmed.