### POTTORFF v. DEAN.
### No. 5677.

District Court, D. Massachusetts.

Oct. 29, 1934.

Parkman, Robbins, Coughlin & Hannan, of Boston, Mass., for plaintiff.

Ropes, Gray, Boyden & Perkins and Charles B. Rugg, all of Boston, Mass., for defendant.

BREWSTER, District Judge.

This action is brought by the receiver of the First National Bank of El Paso, Tex., to recover an assessment of 100 per cent. ordered by the comptroller of currency, pursuant to 12 USCA § 63. The case was tried without jury.

Briefly summarized, the facts are as follows:

Between 1899 and 1922, the defendant had acquired, by purchase or gift, 571 shares of the capital stock of the First National Bank of El Paso (hereinafter referred to as the El Paso Bank). For the shares purchased, she paid an average price per share of $225.

On January 27, 1926, the defendant made an indenture of trust for the benefit of her four children, and transferred to the Boston Safe Deposit & Trust Company and James Dean, the trustees named in the indenture, said 571 shares of stock in the El Paso Bank and 31 shares of stock in the First National Bank of Albuquerque, N. M. This transfer of the 571 shares was recorded on the books of the bank February 16, 1926, and a certificate for the shares was issued to the trustees, as "trustees u/ind dated January 27, 1926, made by Kate S. R. Dean for the benefit of Joshua R. Dean et al." The settlor did not reserve a power to revoke, and no other reservations whatsoever were made for her benefit. The shares were to be held for the benefit of the four children until such time as the trust should terminate and the trust estate be distributed. Provisions were made for the disposition of the income and principal in the event of the death of any of the children. For the purposes of this case, it is sufficient to add that under no circumstances would the donor receive back any part of the trust estate. In transferring to the trust the said shares, she divested herself of any and all interest therein.

The defendant's father had, for several years, been president of and a stockholder in the El Paso Bank. In 1926, and for many years prior thereto, the bank had been considered a prosperous and conservative banking institution. It had paid dividends, and continued to pay them after 1926, ranging from 4 per cent. to 10 per cent. per annum. The shares had a market value of from $100 to $150 up to 1930 when its market value was $135 per share. It was not until 1931 that the solvency of the bank had ever been questioned. While the defendant knew of the statutory liability of stockholders in national banks, this knowledge was not a controlling factor in her decision to create a trust. Her only purpose was to create a fund that would provide for the education and maintenance of her children who were then minors, but three of whom had attained their majority before the assessment was ordered. The trust was created in entire good faith, without any intention whatever of evading the liability of holders of bank stock. After the trust was created, the trustees received dividends on the stock which were distributed in accordance with the terms of the trust to the minor children.

The trustees had an opportunity to sell the shares in the El Paso Bank for a price something over par but elected to retain them, and when the assessment was made, June 28, 1932, the trustees held all the 571 shares of the El Paso Bank and also the 31 shares of the Albuquerque Bank.

These 31 shares in the Albuquerque Bank constituted all the assets in the hands of the trustees other than the shares of the El Paso Bank, and these shares were turned over to the plaintiff in full satisfaction of the trustees' liability under 12 USCA § 66, and they were so accepted by the plaintiff; but in order that he might not be subjected to stockholders' liability in case the Albuquerque Bank was liquidated and insolvent, it was agreed that, until sold, the shares might be held as collateral against the liability of the trustees. When sold, the proceeds would effectually discharge the trustees from all further liability arising from the ownership of the 571 shares of the El Paso Bank.

The above facts, together with requests of both parties for findings, so far as granted, may be taken to be special findings of fact.

The plaintiff's contention is based upon the premise that the law contemplates, as to every share of national bank stock, that there shall be at all times some person or estate which shall be liable as holder thereof.

As I view the cases cited, the doctrine has never been extended so as to read that there

shall at all times be a holder of sufficient financial ability so that he could respond to the assessment. Aldrich v. Bingham (D. C.) 131 F. 363; Riley v. Bondi (C. C. A.) 64 F. (2d) 515; Lucas v. Coe (C. C.) 86 F. 972.

If the stock is held by an insolvent holder, the receiver cannot go back in the chain of title to fasten liability upon the first solvent prior owner.

The correct rule established by the cases undoubtedly is that there shall at all times be a holder of sufficient legal capacity to assent to the statutory liability and one who has so assented. Keyser v. Hitz, 133 U. S. 138, 10 S. Ct. 290, 33 L. Ed. 531; Foster v. Chase (C. C.) 75 F. 797; Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 63 L. Ed. 989, 3 A. L. R. 1038.

Thus, where a parent has purchased national bank stocks and caused the certificate to be issued in the name of his minor children, the father has been held to be the real owner. Early v. Richardson, 280 U. S. 496, 50 S. Ct. 176, 74 L. Ed. 575, 69 A. L. R. 658; Riley v. Bondi, supra; Foster v. Chase, supra; Miller v. Van Zandt (C. C. A.) 67 F. (2d) 901.

And the rule has been held to apply in a case where the parent was subsequently reimbursed out of funds of the minor—no trust having been established. Riley v. Bondi, supra.

The statute governing stockholders' liability clearly contemplates that trustees may hold the stock in national banks and become subject to the liability, the statute expressly relieving the trustee from individual liability and limiting the liability to the trust estate. 12 USCA § 66. And this section has been held to apply to trusts where the beneficiaries were minors. Lucas v. Coe, supra; Fowler v. Gowing (C. C. A.) 165 F. 891; McNair v. Darragh (C. C. A.) 31 F. (2d) 906; Heiden v. Cremin (C. C. A.) 66 F. (2d) 943.

■ It cannot be seriously contended that a trustor who, in good faith, transfers stock to trustees, reserving no beneficial interest whatever in the trust estate, can be held liable if it should turn out that the estate was insufficient to fully satisfy the assessment.

■ I do not overlook propositions of law established by plaintiff's authorities. It is undoubtedly settled that the court will go behind the form of the transaction and ascertain the real, true owner of the stock, regardless of the record ownership. McDonald v. Dewey, 202 U. S. 510, 26 S. Ct. 731, 50 L. Ed. 1128, 6 Ann. Cas. 419; Ohio Valley National Bank v. Hulitt, 204 U. S. 162, 27 S. Ct. 179, 51 L. Ed. 423; Early v. Richardson, supra; Case v. Small (C. C.) 10 F. 722; Houghton v. Hubbell (C. C. A.) 91 F. 453; Corker v. Soper (C. C. A.) 53 F. (2d) 190; Miller v. Van Zandt, supra.

■ And transfers to corporations or trusts, organized or created solely for the purpose of enabling the stockholders to escape the liability, will not relieve the transferor if he retains any beneficial interest in the assets of the corporation or trust. Keyes v. American Life & Accident Ins. Co. (D. C.) 1 F. Supp. 512; English v. Gamble (C. C. A.) 26 F. (2d) 28; Barbour v. Thomas (D. C.) 7 F. Supp. 271; Corker v. Soper (C. C. A.) 53 F. (2d) 190.

Neither of these rules, however, is applicable to the case at bar.

■ There is merit in the contention of the defendant that the receiver is estopped to now enforce liability against the defendant. He has made and collected in part an assessment upon the trust, under section 66. He is now in no position to say that the trust was not the real owner of the stock.

■ In view of the foregoing, however, it is not necessary to pass upon this defense. The decision turns upon my finding and ruling that the defendant was not the real owner.

Judgment may be entered for the defendant.