# UNION GUARDIAN TRUST CO. et al. v. SCHRAM.

## No. 8666.

Circuit Court of Appeals, Sixth Circuit.

Nov. 5, 1941.

James H. Spencer, of Detroit, Mich., (Dykema, Jones & Wheat, of Detroit, Mich., on the brief), for appellant.

Edward M. Brown, of Cincinnati, Ohio (Robert S. Marx, Frank E. Wood, and Ed-

ward M. Brown, all of Cincinnati, Ohio, and Roy G. Holmes and Carl Runge, both of Detroit, Mich., Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellee.

Before HAMILTON, MARTIN, and Mc-ALLISTER, Circuit Judges.

McALLISTER, Circuit Judge.

This suit was brought by the receiver of the First National Bank-Detroit to recover assessments levied upon stockholders of the Detroit Bankers Company. From an adverse decree, the Union Guardian Trust Company, as trustee for the estate alleged to be owner of the stock, appeals.

The pertinent facts are undisputed and may be briefly stated. On May 1, 1913, Henry Russel, George R. Russel, Walter S. Russel, John R. Russel, Sarah R. Hutchins, and Anne D. Russel entered into an agreement with the Union Guardian Trust Company, under the terms of which, certain property was delivered to the company, as trustee, to take and manage and, after deduction of its charges, to pay over one-half of the net income to Anne D. Russel during her lifetime as long as she remained unmarried; and to pay the remaining one-half of the income to the other beneficiaries or their legal representatives. Henry, George, John, and Walter Russel have since died; Anne D. Russel is living and unmarried; Sarah R. Hutchins was living at the time of the trial. The Union Trust Company, in the meantime, became the Union Guardian Trust Company.

In the trust agreement it was provided that the trustee, in its discretion, could dispose of any of the property and reinvest the proceeds for the trust, "but with the advice and consent of some one of the parties of the first part hereto,"—which consisted of the settlors or their legal representatives.

In October, 1929, there were included in the trust, certain shares of stock of the Peoples Wayne County Bank, which were exchanged by the trustee for shares in the Detroit Bankers Company, a holding company for several merged banking institutions, including the Peoples Wayne County Bank. Participation in the merger was voluntary, and it does not appear that, in conformity to the trust agreement, the trustee obtained the consent to its exchange of the stock from any of the settlors of the trust or their legal representatives. The trial court entered findings that the trustee did not obtain such consent.

Thereafter, the exchanged stock was registered in the name of the "Union Guardian Trust Company, Trustee under the Agreement with Henry Russel, et al., dated May 1, 1913." Subsequent to the exchange of the stock, dividends on Detroit Bankers Company stock were paid to the trustee from 1930 to 1933, when the First National Bank-Detroit, one of the companies controlled by the Detroit Bankers Company, closed its doors. The dividends received by the trustee from Detroit Bankers Company stock were distributed during these years to the beneficiaries of the trust. Thereafter, an assessment on the shares in the closed bank was levied by the Comptroller of the Currency. The present suit was brought by the receiver of the First National Bank-Detroit to subject the assets in the Russel trust to the payment of the assessment levied against the shares of the bank, on the theory that the Russel trust, as owner of Detroit Bankers Company stock, was liable as a stockholder for the assessment against the shares of the First National Bank-Detroit. By its suit, the receiver sought to establish liability by virtue of the provisions of R. S. 5152, 12 U.S.C.A. § 66, which provides that persons holding stock as trustees shall not be personally liable to stockholders but that estates in their hands shall be liable in the same manner and to the same extent as the person interested in the trust would be if living and competent to have and hold the stock in his own name.

Appellant contends that, although one or more of the settlors learned of the transfer of the stock by the trustee, none of them either consented to the action, or were advised, until after insolvency of the trustee, that such transfer had been made without the consent of some one of the beneficiaries. It is further urged that the above-mentioned statute refers to stock of a national bank, held by a trustee, and that the trustee in this case, instead of holding stock in the First National Bank-Detroit, held stock in the Detroit Bankers Company; that the articles of association of the latter company, although providing that the holders of its stock should be individually liable for any statutory liability imposed on the corporation by reason of its ownership of shares of capital stock of any bank, are not applicable to the settlors, as they, never having consented to the exchange, cannot be held as owners of stock of the First National Bank-Detroit.

The liability on the assessment does not, however, arise out of contract

alone, but depends also upon the provisions of the above-mentioned statute; and in Barbour v. Thomas, 6 Cir., 86 F.2d 510, certiorari denied, 300 U.S. 670, 57 S.Ct. 513, 81 L.Ed. 877, it was held that the stockholders of the Detroit Bankers 'Company were liable as owners for assessments levied on the shares of constituent banks.

■ We come, then, to the question of whether the Russel trust was the owner of the stock of the Detroit Bankers Company. Much of appellant's argument is based upon the contention that the transfer by the trustee of stock of the Peoples Wayne County Bank in exchange for stock in the Detroit Bankers Company was void, rather than voidable. The Michigan statute governing the investment of trust funds provided that they "may be invested * * * in any manner permitted in and by the agreement, instrument or order creating or defining the trust * * *." Compiled Laws of Michigan, 1929, § 12020. The trust agreement in this case provided that the Trust Company "may, at any time during the pendency of this trust, dispose of any of the said property and reinvest the proceeds thereof, such reinvestment to constitute a part of the trust hereby created, and all such dispositions of property and reinvestments shall be made in the best discretion of the Trust Company, but with the advice and consent of some one of the parties of the first part hereto." Because the trustee had general authority, in its best discretion, to make such investment, subject to receiving the advice and consent of one of the settlors, we are of the opinion that although such consent was not received prior to the investment, the action of the trustee was not void ab initio, but merely voidable. The Russel trust, therefore, became the owner of the stock of the Detroit Bankers Company on a voidable transaction.

■ The trial court held that, in spite of the failure of the trustee to obtain consent to the transfer of the stock, the trust estate was liable as owner by acquiescence to the transfer. Subsequent to the transfer, one of the settlors and beneficiaries learned that Detroit Bankers Company stock had been substituted by the trustee for the stock of the Peoples Wayne County Bank. Thereafter, dividends on the bank stock were paid to the trustee, and, in turn, distributed to the beneficiaries. To the claim that, although she had notice of the transfer, nevertheless, she had no notice that the transaction had not been approved by one of the settlors, we

are of the opinion that her knowledge put her upon inquiry as to whether any of the settlors had advised or consented to the transaction.

The trust had been set up by members of the family. They themselves were the beneficiaries that placed Peoples Wayne County Bank stock in the trust. Any one of the settlors could have consented to a substitution of the bank stock. Anne D. Russel, learning of this substitution of strange banking stock, is assumed to have known that creditors of the bank were relying upon the trustee's ownership and liability to assessment upon the shares of the Detroit Bankers 'Company. The only thing she did not know was whether any one of the five other settlors, or their representatives, had advised or consented to the exchange of the stock.

This intervention of the interest of creditors required some action on the part of one who knew of such reliance, to disavow the representation that the trust would be liable, rather than the clothing of the transaction with apparent authorization. As was said in Lawrence v. First National Bank & Trust Company of Kalamazoo, 266 Mich. 199, 253 N.W. 267, 269, where a settlor was also cestui que trust, "the legal aspect of this case presents a relationship much more nearly akin to that of principal and agent."

Under the circumstances of this case, a duty of inquiry arose, when rights of innocent persons came within the ambit of relations between trustee and beneficiaries.

■■ Implied notice is a presumption of fact relating to what one could learn by reasonable inquiry, and arises from actual notice of circumstances. Charles v. Roxana Petroleum Corp., 8 Cir., 282 F. 983. Having failed to pursue a reasonable inquiry after knowledge of the transfer, as to whether any one of the settlors had consented thereto, it must be held that Anne Russel had implied notice that no such consent had been obtained; and her conduct thereafter, certainly, as to depositors, must be held to have been an acquiescence to the transfer by the Trustee. In this case, acquiescence is equivalent to consent, and in view of the fact that the consent of only one settlor was necessary to authorize the transfer, it is the same as though there had been prior consent; and the trust estate is liable on the assessment.

The decree of the District Court is affirmed.